IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BOBBY HARDRICK,                    §
                                   §
                Plaintiff,         §
                                   §
VS.                                §        Civil Action No. 3:24-CV-0014-D
                                   §
WELLS FARGO BANK NATIONAL          §
ASSOCIATION, et al.,               §
                                   §
                Defendants.        §

MEMORANDUM OPINION
AND ORDER

In this Fair Debt Collection Practices Act action by plaintiff Bobby Hardrick

("Hardrick") against defendants Wells Fargo Bank National Association ("Wells Fargo"),

Resolvion LLC ("Resolvion"), and Keel Recovery Inc. ("Keel"), defendants together move

for summary judgment. For the reasons that follow, the court denies the motion.

I

This lawsuit arises out of a shooting at the residence of the possessor of a vehicle

pledged as collateral for a defaulted auto loan.[1] In July 2021 Chellette Corder ("Corder")

obtained an auto loan from Wells Fargo for the purchase of a 2018 Genesis G80 ("Vehicle"),

---

[1] In deciding defendants' motion for summary judgment, the court views the evidence in the light most favorable to Hardrick as the summary judgment nonmovant and draws all reasonable inferences in his favor, *see, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.), except to the extent Hardrick's version of events is blatantly contradicted by the video evidence submitted by the parties, *see Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021) (discussing *Scott*'s limits).

which she pledged as collateral.  The following year, Corder defaulted on the loan, and Wells Fargo obtained an order to repossess the Vehicle.  For enforcement of the order, Wells Fargo contracted with Resolvion, who subcontracted with Keel.

On December 30, 2022 Keel driver Daniel Fielhauer ("Fielhauer") identified the Vehicle during his nightly patrol of the Berkshire Medical District Apartments ("Apartments").  At that time the Vehicle was in the possession of Corder's then-boyfriend, Hardrick, who rented a unit at the Apartments.  Fielhauer returned for the Vehicle the next morning, but Hardrick had left town.

Both Fielhauer and Hardrick returned to the Apartments on the evening of January 3, 2023.  While Fielhauer conducted his regular patrol of the Apartments, Hardrick, having just arrived home from a work trip, began to remove his daughter's car from his garage and park the Vehicle there.  After Hardrick temporarily parked his daughter's car in the middle of the roadway abutting his garage and then parked the Vehicle in the garage, he returned to his daughter's car to park it in a parking space.  In the moment before Hardrick crossed the roadway between his garage and where he had temporarily parked his daughter's car, Fielhauer drove past.  Then, about twelve seconds later, as Hardrick walked toward his daughter's car, an unknown individual wearing a hooded sweatshirt, who had been lingering nearby, opened fire on Hardrick.  Hardrick fled to his apartment, and the shooter fled in the opposite direction, toward a gate exiting the complex, through which Fielhauer was also exiting.

Suspecting that the shooter was connected to Fielhauer, Hardrick filed this lawsuit

against Wells Fargo, Resolvion, and Keel.  Hardrick's operative amended complaint asserts a federal-law claim against Resolvion and Keel under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, a supplemental state statutory claim against all defendants under the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. § 392.001 *et seq.* (West 1999), and a supplemental Texas common-law claim against all defendants for assault and battery.  Defendants together move for summary judgment.  Hardrick opposes the motion, which the court is deciding on the briefs, without oral argument.

## II

When, as here, parties move for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving parties can meet their summary judgment obligation by pointing the court either to admissible evidence that negates the nonmovant's claim, or the absence of admissible evidence to support the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving parties do so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

-3-

III

Defendants move for summary judgment dismissing Hardrick's claims on the ground that there is insufficient evidence that the shooter was connected to them and that they were engaged in repossessing the Vehicle on the night of the shooting. Defendants maintain that Hardrick therefore cannot meet his burden to prove at trial that, for purposes of each of his claims, any defendant committed a wrongful act, and, concerning the FDCPA specifically, that Hardrick was the object of a collection activity arising from a consumer debt.

Hardrick responds that defendants are not entitled to summary judgment because both facts on which defendants rely are genuinely disputed. Hardrick contends that a reasonable jury could find that the shooter was connected to defendants based on the following evidence: Fielhauer and the shooter were present simultaneously at the Apartments; they left at the same time and via the same exit; and, after the shooting, Fielhauer's conduct was strange. Hardrick posits that a reasonable jury could find that defendants were engaged in repossessing the Vehicle based on evidence that "they had an active repossession order for it, knew the location from the notification on December 30, 2022, and were at the scene when the shooting occurred." P. Resp. (ECF No. 44) at 7.

In reply, defendants contend that the court should hold as a matter of law that the shooter was not their agent and dismiss Hardrick's claims on that basis. Defendants maintain that whether an agency relationship exists is a question of Texas law; when, as here, the essential facts are undisputed, summary judgment is proper if the court concludes that the facts do not establish an agency relationship as a matter of law; and the facts in the summary

-4-

judgment record do not come close to establishing such a relationship.

IV

The court considers initially whether the shooter must be defendants' agent for purposes of Hardrick's causes of action—in which case the relationship between the shooter and defendants is a question of law for the court—or whether a more informal relationship suffices—in which case the relationship is a question of fact for the jury.

A

All of Hardrick's claims share in common the essential element that defendants must have committed a wrongful act against him. *See Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F.Supp.3d 700, 711 (N.D. Tex. 2022) (Fitzwater, J.) (reciting elements of FDCPA claim); *Putty v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (Fitzwater, J.) (same as to TDCA claim), *aff'd*, 736 Fed. Appx. 484 (5th Cir. 2018); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801, 801 n.4 (Tex. 2010) (same as to Texas common-law assault and battery claim). Hardrick's theory of liability is that the shooting was a wrongful act for purposes of each of his claims and that defendants committed that wrongful act because the shooter was "connected to" them.

The parties appear to dispute what level of "connection" is legally required. Defendants maintain that the shooter must have been their agent. Hardrick responds that the shooter was defendants' agent, but a lesser, more informal relationship is also sufficient. This question is significant in deciding defendants' summary judgment motion. If an agency relationship is required, the question whether the shooter was "connected to" defendants is

-5-

ultimately a question of law for the court to decide. *See Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1295, 1295 n.105 (5th Cir. 1994). If, however, a formal relationship is not required, the question whether the shooter was "connected to" defendants is likely one of fact to be decided by the jury.

B

Defendants correctly maintain that vicarious liability typically attaches when the bad actor is the defendant's agent. But an agency relationship does not appear to be required for Hardrick to prevail on his claims. This is because Hardrick's claims all sound in tort and are therefore governed by all background common-law tort principles not expressly abrogated. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."); Tex. Civ. Prac. & Rem. Code Ann. § 5.001(a) (West 2019) ("The rule of decision in this state consists of those portions of the common law of England that are not inconsistent with the constitution or the laws of this state, the constitution of this state, and the laws of this state."). And the common law of torts does not require a special relationship for one actor to be liable for the tortious conduct of another. *See* Restatement (Second) of Torts § 877 (1979) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he [] orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own, or . . . permits the other to act . . . with his instrumentalities, knowing or having reason to know that the other is acting or will act

tortiously[.]"); 70 Tex. Jur. 3d Tort Liability § 23 ("Liability may also be imposed if the defendant knows that the other person's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other person so to conduct themself.").

Accordingly, for purposes of the instant motion, the court will treat the question whether the shooter was "connected to" defendants as a question of fact.

V

Viewing the summary judgment evidence in the light most favorable to Hardrick and drawing all reasonable inferences in his favor, the court concludes that there is a genuine issue of material fact about whether the shooter was "connected to" defendants and whether defendants were engaged in repossessing the Vehicle on the night of the shooting.

A fact is "material if it might affect the outcome of the suit under the governing law." *Allen v. USPS*, 63 F.4th 292, 300 (5th Cir. 2023). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the party with the burden of proof. *See Anderson*, 477 U.S. at 248. Whether the shooter was "connected to" defendants is a material fact for the reasons already discussed. And whether defendants were engaged in repossessing the Vehicle on the night of the shooting is material for purposes of the FDCPA and the TDCA. Both statutes prohibit wrongful acts in the course of collecting a debt. *See Vazzano*, 621 F.Supp.3d at 71 (reciting elements of FDCPA claim); *Putty*, 2017 WL 5070423, at *3 (same as to TDCA claim).

Both facts are genuinely disputed.[2]  There is evidence that there was an outstanding order for repossession of the Vehicle on the night of the shooting; just a few days earlier, Fielhauer identified the Vehicle on the premises; Fielhauer and the shooter were on the premises at the same time; Fielhauer drove his company truck past Hardrick seconds before the shooting; Fielhauer and the shooter left the premises via the same exit; and, although Fielhauer heard the gunshots, he did not call the police or return to the premises to investigate what had occurred.  Defendants, of course, emphasize contrary evidence, such as Hardrick's testimony that he did not see the shooter exit or enter Fielhauer's truck.  A jury may well be persuaded that the shooter was on the premises to commit a completely separate crime, unrelated to the repossession of the Vehicle.  But at the summary judgment stage the court cannot "evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  Instead, the court must decide whether, viewing the evidence in the light most favorable to Hardrick and drawing all reasonable inferences in his favor, a reasonable jury could find for him on the factual issue presented.  *See Anderson*, 477 U.S. at 248.  Here, a reasonable jury could find that the shooter was "connected to" defendants in a manner that is material under the background common-law tort principles discussed above.  For example, a reasonable jury

---

[2]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

could find that Fielhauer brought the shooter along to assist him with the repossession. And although the shooter was not in the Vehicle at the time of the shooting, he fired the shots while attempting to aid Fielhauer, who, as a Keel employee, was prohibited from carrying a firearm. Such findings would support the conclusion that Fielhauer knowingly permitted the act with his instrumentalities. Similarly, a reasonable jury could find that defendants assisted the shooter in connection with the outstanding repossession order and were therefore engaged in repossessing the Vehicle on the night of the shooting.

*    *    *

Accordingly, for the reasons explained, the court denies defendants' March 10, 2025 motion for summary judgment.

**SO ORDERED**.

June 24, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE